**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RAVIRAJH SIVANANTHARSHA,

               Petitioner,

        -v-                              9:26-CV-398 (AJB)

FREDERICK J. AKSHAR, II, *et al.*,

               Respondents.

_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

**I.      INTRODUCTION**

On March 15, 2026, petitioner Ravirajh Sivanantharsha ("petitioner"), a Sri Lankan national, filed a verified emergency petition with this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), seeking immediate release from immigration custody, or alternatively, a bond hearing. Dkt. No. 1.

On April 2, 2026, the Court conditionally granted the Petition and ordered the Government to afford petitioner an individualized bond hearing before an immigration judge at which the Government would bear the burden of justifying petitioner's continued detention. *See* Dkt. No. 8. Six days later, defendants advised the Court that a bond hearing was held, and petitioner was denied bond. *See* Dkt. No. 10.

On April 27, 2026, petitioner moved to enforce the Court's April 2, 2026, judgment, arguing that his bond hearing did not comply with the Court's order, and that he should be released. *See* Dkt. No. 11. The Government has opposed petitioner's motion. *See* Dkt. No. 14.

- 1 -

## II.    DISCUSSION

Petitioner argues that the Court should order his release from detention because his bond hearing was constitutionally deficient and non-compliant with the Court's earlier order.  Dkt. No. 11 ("Pet'r Mem.") at 10–14.  In opposition, the Government argues that petitioner's motion should be denied because: (1) the Court lacks jurisdiction to review an immigration judge's discretionary bond determination; (2) petitioner has failed to exhaust available administrative remedies; and (3) regardless, petitioner's bond hearing complied with the Court's earlier order. Dkt. No. 14 at 4 ("Gov't Opp.").

### A.  The Court's Earlier Order[1]

On March 15, 2026, petitioner moved for a writ of habeas corpus, arguing that his ongoing immigration detention without a bond hearing violated his procedural due process rights.  *See* Dkt. No. 1.

In evaluating procedural due process claims, courts apply the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).  The *Mathews* test requires courts to consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Applying the *Mathews* test, the Court found that: (1) petitioner has a substantial interest in his freedom; (2) there was a high risk that petitioner was erroneously deprived of his freedom

---

[1] The Court's earlier order indicated that a written explanation of the Court's reasoning would be forthcoming.  Dkt. No. 8 at 3.  In the interim, petitioner moved to enforce the Court's judgment.  See Pet'r Mem.  Accordingly, the Court will first address the rationale underlying its earlier order.

because the Government denied petitioner a bond hearing for almost nine months; and (3) any government interest in petitioner's continued detention was diminished by the fact that there had been no individualized determination that he presented a danger to the community or a risk of flight.  Based on these considerations, the Court determined that petitioner was entitled to a bond hearing at which the Government would bear the burden of justifying petitioner's continued detention by establishing petitioner's dangerousness or risk of flight by clear and convincing evidence.  Dkt. No. 8 at 3.

## B.  Jurisdictional Issue

Turning to petitioner's motion to enforce the Court's judgment, the Government argues as a threshold matter that 8 U.S.C. § 1226(e) bars further judicial review of petitioner's challenge to his bond hearing.  Gov't Opp. at 6–7.  The Court disagrees.

To be sure, 8 U.S.C. § 1226(e) "precludes a[ ] [non-citizen] from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'"  *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim,* 538 U.S. 510, 516 (2003)).  But § 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law."  *Velasco Lopez*, 978 F.3d at 850 (internal quotation marks omitted).  And as relevant here, claims that a "discretionary process itself was constitutionally flawed . . . fit comfortably within the scope" of federal habeas review. *Id.* (internal quotation marks omitted).

Contrary to the Government's contention, petitioner is not asking the Court to second guess the immigration judge's discretionary decision to deny him bond.  Rather, petitioner argues that the bond hearing he received was constitutionally flawed—namely, that it lacked the procedural safeguards required by due process.  Pet'r Mem. at 10–14.  Accordingly, 8 U.S.C.

§ 1226(e) does not bar the Court's review of petitioner's challenge to the constitutional sufficiency of his bond hearing.

### C. Exhaustion of Administrative Remedies

Next, the Government argues that the petitioner's motion is premature, because he has "failed to pursue the ordinary administrative review process available for challenging the substance of the immigration judge's bond determination." Gov't Opp. at 4.

"The general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (quoting *Howell v. INS,* 72 F.3d 288, 291 (2d Cir. 1995)). "The requirement of administrative exhaustion can be either statutorily or judicially imposed." *Beharry*, 329 F.3d at 56. Because no statutory exhaustion requirement has been identified, *see generally* Gov't Opp. at 4, the Government's argument is necessarily predicated on the judicial exhaustion doctrine.

The judicial exhaustion requirement is subject to exceptions. *Beharry*, 329 F.3d at 56. For example, courts may excuse a party's failure to exhaust administrative remedies where "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Id.* at 62 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).

Petitioner's motion implicates at least two exceptions—first, that the available remedies (*i.e.*, an appeal to the BIA) would not afford him a genuine opportunity to raise his due process claims. Specifically, petitioner's motion raises a constitutional challenge to the process he received at his bond hearing, *see* Pet'r Mem, and "constitutional claims lie outside the BIA's jurisdiction," *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002).

Petitioner has also satisfied the fourth exception because his motion raises a substantial constitutional question.  Prolonged custodial detention raises significant due process concerns especially where, as here, the detainee has not been convicted of a crime.  *See Velasco Lopez*, 978 F.3d at 850; *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (finding that substantial constitutional question exception applied where petitioner argued that his detention without a bond hearing violated due process).  Petitioner has been detained for over ten months.  Dkt. No. 3-2.  For eight of those months, the Government erroneously denied petitioner an administrative mechanism to review his detention.  *See supra* Point II.A.  Pursuant to this Court's order, the Government granted petitioner a bond hearing, but according to petitioner, his bond hearing lacked the court-ordered and constitutionally necessary procedural safeguards.  *See* Pet'r Mem.

In all, there are sufficient grounds to excuse petitioner's failure to exhaust administrative remedies, and the Court will reach the merits of his motion.

**D.  Merits**

Petitioner claims that the bond hearing he received violated his constitutional right to due process because the immigration judge failed to conduct the hearing in compliance with this Court's order.  Pet'r Mem. at 6–14.  Petitioner's claim can be broken down into two arguments: (1) that the immigration judge was not a neutral and impartial decisionmaker, *see id.* at 6–9; and (2) that petitioner's bond hearing lacked the procedural protections imposed by the Court and required by due process, *id.* at 10–14.

**1.  Impartiality**

As for petitioner's first argument, petitioner contends that recent shifts in the Executive Office of Immigration Review have "co-opted [the immigration court system] into a deportation machine" and prevented immigration judges from remaining impartial.  Pet'r Mem. at 6–9.  This

argument must be rejected.  As the Government put it, "the relevant inquiry is whether the hearing provided *in this case* complied with the Court's order, *see* Gov't Opp. at 7–8 (emphasis added), and petitioner has not offered any evidence from which the Court could conclude that the immigration judge in this case was biased in the Government's favor.

### 2.  Procedural Protections

Next, petitioner argues that the immigration judge who presided over his bond hearing failed to implement the procedural protections required by due process and this Court's earlier order.  Pet'r Mem. at 10–12.  In opposition, the Government maintains that petitioner's bond hearing complied with the Court's order, emphasizing that "the immigration judge relied on BIA precedent and analyzed relevant bond factors."  Gov't Opp. at 8.

As noted *supra*, the Second Circuit applies the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to immigration detention-related procedural due process claims. *Velasco Lopez*, 978 F.3d at 850.  Upon review of the submissions, including an audio recording of petitioner's bond hearing, *see* Dkt. No. 12 ("Bond Hr'g Audio"), the Court concludes that petitioner's bond hearing lacked the procedural protections that due process required.

### i.  The Private Interest Affected

First, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. "Case after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  The interest in being free from imprisonment is particularly compelling where a challenged confinement is civil in nature because, unlike criminal proceedings, "[civil proceedings] are nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Petitioner was convicted of no crime, but has nevertheless been detained for over ten months.  *See* Dkt. No. 3-2 at 7–11.  Throughout petitioner's detention, he has been unable to "maintain employment or see . . . friends or others outside normal visiting hours."  *Velasco Lopez*, 978 F.3d at 851.  This amounts to a substantial deprivation of his liberty.

### ii.  The Risk of Erroneous Deprivation

Second, the risk of an erroneous deprivation of petitioner's liberty interest through the procedures used was high because the immigration judge who presided over petitioner's hearing failed to comply with the requirements imposed by the Court's April 2, 2026, order.  There, the Court found that due process required the Government to afford petitioner an individualized bond hearing at which the Government would "bear the burden of proving by clear and convincing evidence that petitioner is either a flight risk or a danger to the community, justifying his continued detention without bond."  Dkt. No. 8 at 3.

At the conclusion of petitioner's bond hearing, the immigration judge determined that the Government carried its burden of showing that petitioner was a flight risk.  Dkt. No. 11-2 at 1; *see also* Bond Hr'g Audio at 55:47–55:54[2] ("[Petitioner] is a flight risk and therefore bond is denied.").  But the immigration judge did not make any factual findings as to whether bond or the other proposed alternatives to detention could ameliorate petitioner's flight risk, *see generally* Bond Hr'g Audio.

Because the Court's order required the Government to justify petitioner's *continued detention* based on his dangerousness or flight risk, the immigration judge's failure to consider the adequacy of proposed alternatives to detention created a high risk that petitioner would be

---

[2] The Court reviewed the audio file of petitioner's bond hearing in full using a media player application.  All pin citations to the file reflect the time stamps in minutes and seconds (*e.g.*, 00:00) depicted by the Court's media player application.

erroneously deprived of his liberty. *See Black v. Decker*, 103 F.4th 133, 158 (2d Cir. 2024) (holding that, absent a showing of dangerousness, "refusing to consider ability to pay and alternative means of assuring appearance creates a serious risk that the noncitizen will erroneously be deprived of the right to liberty purely for financial reasons").

Even assuming that the immigration judge *implicitly* considered and rejected the feasibility of alternatives to detention, that finding would nevertheless demonstrate noncompliance with the Court's order—namely, that the immigration judge failed to hold the Government to the correct standard of proof.

The Court's order required that the Government bear the burden of justifying petitioner's continued detention by clear and convincing evidence. Dkt. No. 8 at 3. "'[C]lear and convincing evidence' . . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *Jimenez v. Stanford*, 96 F.4th 164, 190 (2d Cir. 2024) (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). To meet this standard, a party must present sufficient evidence to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

Without more, mere speculation that a noncitizen could potentially violate terms of release is insufficient to establish the inadequacy of detention alternatives by clear and convincing evidence. *See, e.g.*, *Velasco Lopez*, 978 F.3d at 853 ("The Government's 'lack of information' . . . is an inadequate justification for the indeterminate incarceration of an individual who did not pose a heightened bail risk."); *Mathon v. Searls*, 623 F. Supp. 3d 203, 218 (W.D.N.Y. 2022) (finding DHS arguments that there was "a chance" that noncitizen "could cut off his ankle monitor" and fail to comply with telephone check-in requirements legally

insufficient to establish the inadequacy of alternatives to detention by clear and convincing evidence); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241 (W.D.N.Y. 2019) ("If the clear and convincing standard means what it says, it cannot permit detention based on mere speculation that an alien's release might possibly pose a danger.").

Upon review of the available record of petitioner's bond hearing, the Government's showing was insufficient as a matter of law to establish by clear and convincing evidence that no alternatives to detention could ensure petitioner's attendance at future court appearances.

Instead of presenting evidence to demonstrate that petitioner was likely to violate any conditions that might have been imposed on his release, the Government attempted to recast its burden onto petitioner by asking him to confirm, in various ways, that there would be nothing physically stopping him from violating conditions of release and absconding. Bond Hr'g Audio at 34:37–36:52, 38:36–39:25.

In response, petitioner conceded that he had the physical ability to abscond, but vehemently denied any intent to do so. Bond Hr'g Audio at 34:37–36:52, 38:36–39:25. Petitioner testified that he would appear for all future court dates and comply with any conditions imposed on his release, including electronic monitoring. *Id.* He testified that he had a work permit and would have employment with a local landscaping company. *Id.* Additionally, petitioner affirmed that he has no criminal record and that he has never been arrested for any crimes in the United States or abroad. *Id.* at 37:15–37:38.

For petitioner's part, he offered sponsorship evidence, including proof of his sponsor's income and lawful permanent resident status. Dkt. No. 11-3 at 4–14. In closing, petitioner's attorney represented that petitioner had no immigration bond violations in the nearly five years

he had been out on bond, and that he was able to post up to a $5,000 bond.  Bond Hr'g Audio at 53:58– 54:17–55:06.

In all, the Government's "evidence" amounted to little more than an improper attempt to shift the burden of proof to petitioner to show that he would likely comply with release conditions.  The immigration judge's failure to hold the Government to the clear and convincing evidence standard of proof imposed by the Court's April 2, 2026, order created a heightened risk that petitioner would be erroneously deprived of his freedom.

### iii.  The Government's Interest

Lastly, the Government's interest in petitioner's prolonged detention is diminished under the circumstances.  "[W]hile the government's legitimate interests justify a relatively short-term deprivation of liberty, the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need."  *Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (internal citation omitted).

Petitioner has been detained for over ten months.  Dkt. No. 1 ¶ 9.  And although the Government contends that petitioner's detention is justified by his flight risk, it has not carried its burden of showing by clear and convincing evidence that no alternatives to detention could mitigate petitioner's flight risk.  *See supra* Point II.D.2.ii.  Consequently, the Government has a reduced interest in petitioner's continued detention.

### E.  Remedy

Federal courts are afforded "broad discretion ... in fashioning the judgment granting relief to a habeas petitioner."  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  "Typically, the relief granted in federal habeas corpus proceedings is a conditional writ to allow the government an opportunity to correct the constitutional defects in the challenged proceeding."  *Mathon v. Searls*, 623 F. Supp. 3d 203, 218 (W.D.N.Y. 2022).

The Court initially took this approach and issued a conditional writ of habeas corpus. Dkt. No. 8.  But as explained above, the immigration judge at petitioner's bond hearing failed to comply with the conditions set forth in the Court's order.  Given the length of petitioner's detention and the Government's failure to meet the standard of proof at petitioner's last bond hearing, there would be minimal utility in ordering the Government to conduct yet another bond hearing.

Other courts in this Circuit have ordered immigration detainees released on conditions where the record indicated that an immigration judge failed to implement court-ordered procedural safeguards at the detainee's bond hearing.  *See Hechavarria*, 358 F. Supp. 3d at 242–43 (granting motion to enforce and ordering release on conditions where the petitioner "was not given the hearing to which he was entitled," as "the IJ did not consider [the petitioner's] proffered alternative [to detention]—or any alternative, for that matter"); *Mathon*, 623 F. Supp. 3d at 217 (granting same where "the IJ disregarded the express terms of the Court's order and improperly relieved the government of the burden of proving by clear and convincing evidence that there were no alternatives to detention that could mitigate any risk of flight or danger to the community").

The Court adopts this approach.  Petitioner's motion to enforce is granted in part.  The Government will be ordered to release petitioner on conditions proposed jointly by the parties and approved by the Court.

III.   **CONCLUSION**

**ORDERED** that

1. Petitioner's motion to enforce the Court's order is (Dkt. No. 11) is **GRANTED**, in part;

2. The parties are directed to jointly file proposed conditions of release reasonably tailored to ensure petitioner's future attendance at immigration hearings, including but not limited to the details of a personal recognizance bond, along with any sureties, and geolocation monitoring within 14 days of this order; and

3. Upon the Court's approval of release conditions, the Government will be directed to release petitioner on those conditions.

The Clerk of the Court is directed to terminate the pending motions.

**IT IS SO ORDERED.**

Dated:  June 9, 2026
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge

- 12 -